STATE, Respondent, v. MULLIS, Appellant.†

*No. 75–587. Submitted on briefs December 1, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 696.)

† Motion for rehearing denied, without costs, on March 3, 1978.

For the appellant the cause was submitted on the brief of *Thomas G. Hetzel* of Kenosha.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Albert Harriman,* assistant attorney general.

HEFFERNAN, J. The judgment before this court was entered in the circuit court for Kenosha county affirming a judgment of conviction in the county court of Kenosha county. The defendant, Robert D. Mullis, was charged with two counts of operating a motor vehicle after revocation of his driver's license, contrary to sec. 343.44, Stats. The separate violations occurred on August 24 and August 25, 1973. He was found guilty of both charges and was convicted on January 18, 1974. The judgment of the county court was affirmed by the circuit court on January 7, 1976.

Mullis, on this appeal, raises several issues by which he attempts to justify the reversal of his conviction. Although we find none of them meritorious, we will consider them *seriatim.*

His initial claim is that he was denied the right to a speedy trial. The record demonstrates that the uniform traffic citations were issued on August 24 and August 25, 1973. By September 12, 1973, he had been arraigned on both charges, and trial had been set for November 5, 1973. On October 30, 1973, the state moved to adjourn the trial until December 3, 1973. The state's motion was granted, and the trial was held on all counts on December 3, 1973, eighty-four days after the first arraignment.

The violation of the defendant's statutory right to a speedy trial is not shown by this chronology. The viola-

tions charged were misdemeanors. Sec. 971.10(1), Stats., *Speedy trial,* requires, in the case of misdemeanors, that the trial commence within sixty days of the defendant's initial appearance. Sec. 971.10(3)(a) authorizes the court to continue a case on its own motion or on the application of any party. Such continuance, however, may not be granted for a period in excess of sixty days. It is apparent, therefore, that, under the statutes, the court was authorized to grant the continuance on the *ex parte* application of the state. The continuance resulted in having the case tried only eighty-four days after the defendant's initial appearance in court. The statutory right to the speedy trial of a misdemeanor clearly was not violated.

Moreover, the mere recitation of the chronology demonstrates that the constitutional right to a speedy trial was not infringed upon. The rationale for determining whether there has been a deprivation of the constitutional right to speedy trial is substantially set forth in *Barker v. Wingo,* 407 U.S. 514 (1972). The relevant factors identified there are the length of delay, the reason for the delay, whether or not the defendant asserted the right to a speedy trial, and whether the delay caused prejudice to the defendant. These criteria have been embodied in the decisional law of this state. *Day v. State,* 61 Wis.2d 236, 212 N.W.2d 489 (1973), *cert. denied,* 417 U.S. 914 (1974). Other than the fact that the defendant has chronologically shown an elapsed time of eighty-four days and has made the assertion—an assertion not demonstrated in the record—that he made a demand for a speedy trial, no attempt has been made on this appeal to invoke the balancing factors set forth in *Barker.* Moreover, it was emphasized in *Norwood v. State,* 74 Wis.2d 343, 246 N.W.2d 801 (1976), *cert. denied,* 430 U.S. 949 (1977), that the initial inquiry under *Barker* must be

the length of the delay. Unless the length of delay is so inordinate as to be presumptively prejudicial, no resort to the other factors need be made. Upon this threshold inquiry, we conclude that no presumptive prejudice resulted. There was no denial of either the defendant's statutory or constitutional right to a speedy trial.

Additionally, the defendant argues that the evidence was insufficient to convict, because it was based upon a stipulation entered into in open court between counsel, which stipulation was deficient because it failed to include the year in which the violations allegedly occurred. It is apparent that the district attorney attempted to introduce an oral stipulation which was, arguably at least, deficient in the respect claimed by defense counsel. However, because of the confusion in the proceedings at that point, the trial judge rejected the stipulation, stating:

"I'm not going to accept any stipulation. What we're going to do is put the case on with the testimony of the witnesses, and we'll start right now."

The defense counsel then objected to the withdrawal of the stipulation, but it is clear from the record that the stipulation was never accepted in the first place. Moreover, after the noon recess, a written stipulation was entered into by the district attorney and defense counsel, and that stipulation was read into the record. That stipulation cured the defect originally claimed by the defense counsel in that it specifically recited that the violations took place in 1973.

Incongruously, as a part of this stipulation, defense counsel reserved the right to enter his objections in writing. We find no sufficient reason to vitiate defense counsel's agreement to the facts recited. The only conceivable objection that could be posed would go to the

question of whether the subsequent written stipulation was inconsistent with the oral stipulation; but as the record demonstrates, the oral stipulation was rejected by the court and has no legal consequences. The written stipulation is sufficient to supply any lacunae which defense counsel asserted were left by the abortive oral stipulation. Because the properly received written stipulation recited the year in which the offenses took place, dismissal of the charges is unwarranted on that basis.

To prove that the defendant was operating a motor vehicle at a time when his driving privileges were revoked, the state introduced a certificate of the Administrator of the Division of Motor Vehicles of the State Department of Transportation. The defendant objected to the introduction of this evidence, because the certificate constituted inadmissible hearsay and because there was insufficient proof to demonstrate that the Robert D. Mullis named in the certificate was the same person as the defendant.

We conclude that the certified copy of the order of revocation was properly admitted by the trial judge. This court pointed out in *State v. Carmody,* 44 Wis.2d 33, 170 N.W.2d 818 (1969), that the Administrator of the Division of Motor Vehicles is empowered to revoke drivers' licenses and that, therefore, when the revocation has been made by the Administrator, his order of revocation is the best evidence available to show the revocation of an individual's operating license.

The disputed certificate, the authenticity of which is not questioned, included a copy of an order dated January 17, 1973, revoking the operating privileges of Robert D. Mullis for a period of one year commencing on December 20, 1972. This certified copy of the order was admissible under sec. 889.18(2), Stats., as an of-

ficial record of a public officer of this state, which may be given the same evidentiary use as the original document.

This properly certified and authenticated document is not objectionable as hearsay, because it does not purport to narrate matters which would be subject to cross-examination or disproof thereby. It, rather, has the evidentiary significance of placing before the court the operative fact that Mullis' driver's license had, as a matter of fact, been revoked by the Administrator of the Division of Motor Vehicles. No conclusionary or hearsay statements are contained therein.

To the extent that other portions of the Administrator's certificate contained hearsay, such statements, of course, are not admissible. However, the trial in this case was to the court, and the stringent rules in respect to possible prejudicial error applicable to jury trials are not appropriate. We said in *Carmody, supra,* at 37, reciting previous holdings of this court:

" '. . . While evidence that is not admissible in a jury trial is equally inadmissible in a trial to the court, yet this court views the situation as distinct. We have previously stated:

" ' "In a case tried by the court the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different." *Birmingham v. State* (1938), 228 Wis. 448, 454, 279 N.W. 15, quoting from *Topolewski v. State* (1906), 130 Wis. 244, 109 N.W. 1037.' *Gauthier v. State* (1965), 28 Wis. 2d 412, 421, 137 N.W.2d 101, certiorari denied, 383 U.S. 916, 86 Sup. Ct. 910, 15 L. Ed.2d 671."

The hearsay admittedly contained in other portions of the Administrator's certificate was largely irrelevant and harmless beyond a reasonable doubt.

The defendant raises yet another objection to the admission of this certificate. He, in effect, attacks the probativeness of the Administrator's revocation, because he asserts that the Robert D. Mullis before the court was not proved to be the same person as the Robert D. Mullis whose operating privileges were revoked. It is undisputed that the defendant before the court was identified as Robert D. Mullis, and he does not contend that is not his name.

A similar problem has been presented in respect to whether a defendant before the court was a repeater, and proof of prior convictions by a person bearing the same name was introduced into evidence. In that context, this court has concluded that the identity of the names of the defendant and a person previously convicted is *prima facie* evidence of the identity of the person. This question was discussed in *Block v. State,* 41 Wis.2d 205, 163 N.W.2d 196 (1968). This court held that, although the burden of proving identity is on the state, a *prima facie* case is established beyond a reasonable doubt by establishing the identity of names. In the absence of rebutting evidence, proof of identity of the person is substantiated by the proof of the identity of the name. Nevertheless, we pointed out that the trial judge, in making this determination, should consider such factors as the commonness of the name in the locality, the place of the commission of the crime, the character of the crime, and other factors that would alert the court to possible deficiencies in making a final determination of identity on the basis of the name alone.

In the instant case, the defendant, in open court, gave his name as Robert Mullis, and nowhere does the contention appear in the defendant's brief that the defendant's name was not Robert D. Mullis. The name Mullis

is not a common one, as is demonstrated by this court's resort to the telephone directory assistance service for the City of Kenosha. Only one listing was reported, and that listing is of Robert D. Mullis. We are satisfied that a *prima facie* case of identity of the person was made by the state. In view of the fact that there was no rebuttal testimony whatsoever, the finding of identity is sufficient to attach probativeness and relevancy to the Administrator's certificate.

We conclude that the county court record upon which the circuit judge upheld the conviction was sufficient to demonstrate guilt beyond a reasonable doubt. We accordingly affirm the circuit court's determination.

*By the Court.*—Judgment affirmed.